UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH HENRY, | ) | Case No. 5:16CV1189 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| DAVID W. GRAY[1], WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| | ) | |

On May 12, 2016, Petitioner, Kenneth Henry ("Petitioner"), pro se, executed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was filed with this Court on May 18, 2016. ECF Dkt. #1. He seeks relief for alleged constitutional violations that occurred during his Summit County, Ohio Court of Common Pleas convictions for two counts of rape of a minor under the age of 13 and one count of gross sexual imposition ("GSI"). *Id.*; ECF Dkt. #9-1 at 9-11.

On July 29, 2016, Respondent Warden of the Belmont Correctional Institution in St. Clairsville, Ohio, filed a Return of Writ. ECF Dkt. #9. On August 29, 2016, Petitioner filed a Traverse. ECF Dkt. #11.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice:

I. **SYNOPSIS OF THE FACTS**

The Ninth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999). As set forth by the Ohio Court of Appeals, the facts are:

On the first weekend of November 2013, twelve-year-old M.H. was staying at her

---

[1] According to the Ohio Department of Rehabilitation and Correction website, David W. Gray is now the Warden of Belmont Correctional Institution. *See* http://drc.ohio.gov/beci. Thus, the docket should reflect Warden David. W. Gray as the Respondent in this case.

mother's house.  On Friday evening, she went to bed wearing a pair of black pajama shorts.  She was still wearing them on Saturday when she saw her mother's boyfriend, Mr. Henry.  She later changed out of her shorts because she was going shopping with her mother.  When she next saw Mr. Henry, he told her that she should put the pajama shorts back on because she "looked hot in them."  M.H. did not tell her mother about the comment because she did not think her mother would believe that Mr. Henry had said it.

M.H. testified that, after they returned to the house, she was alone in the kitchen with Mr. Henry and he asked her whether she had ever had her "private part [e]aten out." Although the question made her uncomfortable, she again did not tell her mother about it.  That evening, her mother left for work, but Mr. Henry stayed at the house to watch M.H.'s younger sister.

According to M.H., after her mother left, she spent some time on the computer, then changed into her pajama shorts and lay down on a couch under a blanket to watch television.  She eventually fell asleep.  When she awoke, Mr. Henry was hovering over her and had his hand under the blanket over her vaginal area.  She tried to pretend that she was asleep, but Mr. Henry moved the blanket aside and pulled her shorts and underwear down.  He got on top of her, then stood back up and removed his pants.  When he got on top of her again, "he put his private part" in her vagina. M.H. testified that he eventually took it out, but then he moved his head down to her vagina and began licking it.  After he finished, he moved back to where he had been and "put his private part back in my private area."  She testified that Mr. Henry also reached under her shirt and put his hands on her breasts.  A couple of minutes later he got off of her and told her that he "had comed."

M.H. testified that, after Mr. Henry left the room, she put her clothes back on.  Since it was "morning-ish," she got on the computer and began to exchange messages with her best friend, eventually telling her what had happened.  The friend told her mother, and the two of them came over to talk to M.H.  M.H. was uncomfortable talking about it, so she wrote down what happened instead.  Although M.H.'s mother was home at the time, she was asleep.  After reading M.H.'s note, the friend's mother woke M.H.'s mother, gave her the note, and convinced her to call the police.  When the police arrived, they took M.H. to the hospital for evaluation.  DNA testing indicated that Mr. Henry's sperm was in M.H.'s underwear.

ECF Dkt. #9-1 at 84-86.

In his Traverse, Petitioner attempts to challenge the way in which the Ohio appellate court summarized some of the facts. ECF Dkt. #11 at 5.  He first cites to the Ohio appellate court's factual assertion that he had his hand under the blanket over the victim's vaginal area and he contends that the manner in which the appellate court characterized this statement leads one to infer that he had his hand underneath the victim's shorts and was touching her bare skin.  *Id*. at 2-3. He quotes the victim's testimony at trial which he contends contradicts such a finding.  *Id*.  The undersigned finds that Petitioner has failed to rebut by clear and convincing the presumption of correctness of

the Ohio appellate court's factual findings as the particular finding about which he complains does not infer a finding that his hand was on the victim's bare skin.

Petitioner attempts to cite to another instance concerning the Ohio appellate court's summary of the facts that he asserts contains a "misstatement." ECF Dkt. #11 at 3.  He quotes the Ohio appellate court's summary which states that "[the victim] tried to pretend that she was asleep, but  Mr. Henry moved the blanket aside and pulled down her shorts and underwear.  He got on top of her, then stood back up and removed his pants."  *Id*. at 3, quoting ECF Dkt. #9-1 at 85.  The undersigned is uncertain of what exactly Petitioner is challenging as he asserts that "[i]t was not until after a period of 'leading' and 'suggestive' questioning that M.H. testified that Mr. Henry removed his pants after getting on and off of her numerous times, (T.P. 360), [**Exhibit C**], that Mr. Henry actually did take off her panties at T.P. pages[s] 360-361. **[Exhibit C**] This witness was more or less told what to say to the jury without any objections by trial counsel.  Nonetheless, the witness was all over the place, she was never consistent with her testimony, a careful read of the testimony, this court should be able to read through what is truth and what is not truth." ECF Dkt. #11 at 4-5.  Without clarification or further explanation, the undersigned recommends that the Court find that Petitioner has failed to rebut by clear and convincing evidence the presumption of correctness of the Ohio appellate court's factual findings in this case.

## II.  **PROCEDURAL HISTORY**

### A.  **State Trial Court**

In its November 2013 term, the Summit County, Ohio Grand Jury indicted Petitioner on two counts of rape of a person under the age of thirteen in violation of Ohio Revised Code ("ORC") § 2907.02(A)(1)(b) and one count of GSI in violation of ORC § 2907.05(A)(4).  ECF Dkt. #9-1 at 3-4.

On April 25, 2014 the jury returned a verdict finding Petitioner guilty of all of three charges in the indictment.  ECF Dkt. #9-1 at 9-11.  The court journalized the verdict on April 30, 2014. *Id*. at 12.  The court sentenced Petitioner on May 13, 2014 to a total term of 25 years to life imprisonment.  *Id*. at 13-14.  The court also imposed a term of post-release control and adjudicated him a Tier III Sex Offender/Child Victim Offender and informed him of his duties to register as such.  *Id.* at 14.

B.      **Direct Appeal**

On June 6, 2014, Petitioner filed a notice of appeal and asserted the following assignments of error in his appellate brief:

> 1. The trial court erred to the prejudice of defendant when it allowed the hearsay statement of M.H. to be read into the record.
>
> 2. Appellant's Conviction Was Based Upon Insufficient Evidence To Sustain Conviction.  The Trial Court Erred by Denying Appellant's Crim. R. 29 Motion.
>
> 3. The trial court erred to the prejudice of Defendant when it refused to give instructions on the lesser included offenses of Gross Sexual Imposition as Defendant requested.
>
> 4. The trial court improperly increased Defendant's sentence based on his refusal to accept a plea offer, increasing his sentence as punishment for exercising his constitutional right to a jury trial.
>
> 5. The trial court committed plain error by failing to merge all three counts at sentencing.

ECF Dkt. #9-1 at 18-40.  The State of Ohio filed an appellate brief and Petitioner filed a reply brief.  *Id*. at 45-83.

On December 9, 2015, the Ohio appellate court addressed Petitioner's assignments of error and affirmed the trial court's judgment. ECF Dkt. #9-1 at 84-93.  One of the appellate court judges concurred in part but dissented in part as to Petitioner's fourth assignment of error, finding that some of the trial court's statements to Petitioner before trial created the appearance that the judge would impose a greater sentence if Petitioner proceeded to trial and was convicted.  *Id*. at 93.  The appellate court judge indicated that he would have vacated Petitioner's sentence and remanded his case for resentencing.  *Id*.

C.      **Ohio Supreme Court**

On January 25, 2016, Petitioner, pro se, filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #9-1 at 94-95.  In his memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

> Proposition of Law 1: The trial court erred to the prejudice of Defendant when it allowed the hearsay statement of M.H. to be read into the record.  Ohio Constitution Article I Sect. 10, and the 5th, 6th and 14th Amend[s]. to the United States Constitution.

-4-

Proposition of Law 2: Appellant's conviction was based upon insufficient evidence to sustain conviction of rape.  The trial court erred by denying Appellant's Crim. R. 29 Motion. Ohio Constitution Article I Sect. 10, and the 5th, 6th and 14th Amend[s]. to the United States Constitution.

Proposition of Law 3: The trial court erred to the prejudice of Defendant when it refused to give instructions on the lesser included offenses of Gross Sexual Imposition as Defendant requested. Ohio Constitution Article I Sect. 10, and the 5th, 6th and 14th Amend[s]. to the United States Constitution.

Proposition of Law 4: The trial court improperly increased Defendant's sentence based on his refusal to accept a plea offer, increasing his sentence as punishment for exercising his constitutional right to a jury trial. Ohio Constitution Article I Sect. 10, Art. IV Sect. 5, and the 5th, 6th and 14th Amend[s]. to the United States Constitution.

Proposition of Law 5: The trial court committed plain error by failing to merge all three counts at sentencing.  Ohio Constitution Article I Sect. 10, Art. IV Sect. 5, and the 5th, 6th and 14th Amend[s]. to the United States Constitution.

*Id.* at 94-124.  The State waived the filing of a responsive memorandum.  *Id*. at 139.

On April 20, 2016, the Supreme Court of Ohio declined jurisdiction of Petitioner's appeal.  ECF Dkt. #9-1 at 140.

## III. 28 U.S.C. § 2254 PETITION

On May 12, 2016, Petitioner, pro se, executed the instant petition for a writ of federal habeas corpus, which was filed in this Court on May 18, 2016.  ECF Dkt. #1.  Petitioner raises the following grounds for relief:

1. The trial court erred to the prejudice of Petitioner when it allowed the hearsay statement of M.H. to be read into the record in violation of the 5th, 6th, & 14th Amend[s] to the United States Constitution.

   Supporting facts: Mr. Henry argues that the trial court erred when it allowed the State to admit the note in which M.H. (victim) described the alleged sexual assault.  The court determined that it was admissible under the excited utterance exception to the hearsay rule.  Mr. Henry argues that too much time elapsed between when the alleged attack happened and when M.H. gave the note to her friend's mother for it to fall under that exception. [See attached page 1-2].

2. Petitioner's conviction was based upon insufficient evidence to sustain conviction of rape.  The trial cout erred by denying Petitioner's Crim. R. 29 motion.  In violation of the 5th, 6th, and 14th Amend[s]. to the United States Constitution. [See attached page 1-2].

Supporting facts: Mr. Henry argues that the State did not present sufficient evidence to convict him of rape.  In Ohio, whether a conviction is supported by sufficient evidence is a question of law, which the Court reviews de novo.  In making this determination, a court must view the evidence in the light most favorable to the prosecution:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. [See attached page 2-3].

3.  The trial court erred to the prejudice of Petitioner when it refused to give instructions on the lesser included offenses of Gross Sexual Imposition as Petitioner requested.  In violation of the 5th, 6th and 14th Amend[s]. to the United States Constitution.

Supporting facts: Mr. Henry next argues that the jury should have been instructed that they could consider the lesser-included offense of gross sexual imposition for the rape charges.  He argues that, since his DNA was not detected on the vaginal swab of the victim, but was detected in her underwear, the jury could have concluded that he did not penetrate her and, therefore, only engaged in sexual contact with the victim, not sexual intercourse.

In Ohio, when the evidence supports a lesser included offense, an instruction on the lesser offense is required.  In this case, the State conceded that Gross Sexual Imposition (GSI) is a lesser included offense of rape, and Ohio law recognizes this fact.  (See attached page 3].

4.  The trial court improperly increased Defendant's sentence based on his refusal to accept a plea offer, increasing his sentence as punishment for exercising his constitutional right to a jury trial.  Proposition of Law 4: The trial court improperly increased Defendant's sentence based on his refusal to accept a plea offer, increasing his sentence as punishment for exercising his constitutional right to a jury trial. In violation of the 5th, 6th and 14th Amend[s]. to the United States Constitution.

Supporting facts: In Ohio, the right to trial contained in the *Sixth Amendment of the United States Constitution and Section 5, Article I of the Ohio Constitution* is a fundamental component of the American Judicial and Plays a paramount role in the pursuit of justice.  The trial court must refrain from appearing that exercising this right will affect a defendant's freedom.  This idea is fundamental and paramount to American justice.

In this case, Ninth District Court of Appeals Justice Carr, J., concurred in part, and dissented in part stating in the opinion the following: [See attached page 4][attaching opinion].

-6-

5.     The trial court committed plain error by failing to merge all three counts at sentencing.  In violation of the 5th, 6th, and 14th Amend[s]. to the United States Constitution.

Supporting facts: Mr. Henry's fifth argument is that the trial court should have merged his convictions at sentencing because they were all committed with the same animus as part of the same course of conduct. Mr. Henry, however, conceded this assignment of error at oral argument.  Yet, the court of appeals affirmed the decision of the trial court in violation of the 14th Amendments Equal Protection Clause of the United States Constitution.

ECF Dkt. #1 at 5-12.  On July 29, 2016, Respondent filed a Return of Writ.  ECF Dkt. #9.

On August 29, 2016, Petitioner filed a Traverse.  ECF Dkt. #11.

## IV.     PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "[p]rocedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.     Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not currently at issue in this case.

### B.     Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th

-7-

Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement.  *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).   In these cases, "the state judgment rests on independent and adequate state procedural grounds."   *Coleman v. Thompson*, 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*,

501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).  Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims.  *Coleman*, 501 U.S. at 729-30; *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises).  Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).  Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).

-9-

The above standards apply to the Court's review of Petitioner's claims.

**V**.     **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court

-10-

decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## VI.    LAW AND ANALYSIS

### A.    GROUND FOR RELIEF NUMBER 1 -NONCOGNIZABILITY

Respondent asserts that the Court should decline to review Petitioner's first ground for relief because it is a state law issue not cognizable in federal habeas corpus. ECF Dkt. #9 at 8-10. For the following reasons, the undersigned agrees and recommends that the Court find that Petitioner's first ground for relief is not cognizable before this Court.

A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). A federal court may review a state prisoner's habeas

-11-

petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). "A federal habeas court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir.2005) (internal quotation omitted). Accordingly, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012). However, state-court evidentiary rulings may "rise to the level of due process violations [if] they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). They must be "so egregious that [they] result[ ]in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). "[C]ourts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.' " *Id*. (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

In his first ground for relief, Petitioner alleges that the trial court erred by admitting into evidence a note written by the victim which described the alleged sexual assault. ECF Dkt. #1 at 5, 18-19; ECF Dkt. #11 at 6-10. He contends that the note was hearsay and should not have been admitted under the excited utterance exception to hearsay of Rule 803(2) of the Ohio Rules of Evidence. ECF Dkt. #11 at 6.

A state trial court's evidentiary rulings do not form the basis of federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id*. at 68. Petitioner's instant claim involves a state law issue of evidence. It is thus not cognizable before this Court.

However, federal habeas corpus relief is warranted in such situations where a state's evidentiary ruling results in the denial of federal due process. *Estelle*, 502 U.S. at 67-68. In his Traverse, Petitioner asserts that his Confrontation Clause rights were violated by the trial court's admission of the note into evidence and "clearly the prejudice from presenting this evidence is that,[sic] the jury had something tangible to rely on in making their decision to convict Mr. Henry." ECF Dkt. #11 at 10. He cites to Ohio law and federal law in support. *Id*. at 8-10.

-12-

The undersigned recommends that the Court find that even if the court erred in admitting the note from the victim into evidence, no fundamental fairness in violation of due process has resulted. Petitioner's assertion of prejudice because "something tangible" was presented is without support or merit. Moreover, the victim who wrote the note testified at the trial concerning the note's contents and the circumstances concerning the events that resulted in the jury's convictions. Defense counsel cross-examined the victim, but asked no questions about the note, although counsel did note his prior objection to the admission of the note into evidence. ECF Dkt. #9-4 at 73-74, 86-105. Without more, the undersigned recommends that the Court find that Petitioner has failed to present a fundamental fairness due process violation even if the trial court had committed error in admitting the note.

### B.  GROUND FOR RELIEF NUMBER 2– INSUFFICIENT EVIDENCE

In this Ground for Relief, Petitioner asserts that insufficient evidence was presented to convict him of vaginal rape as charged in the first count of the indictment. ECF Dkt. #1 at 1 at 6-7, 16-17; ECF Dkt. #9-3 at 24; ECF Dkt. #11 at 10-13. He contends that while the evidence presented at trial showed that his DNA contacted the victim's clothing, this does not establish that vaginal penetration occurred in order to meet the elements of the crime of rape under Ohio law. *Id*. at 16.

An allegation that the verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, reh'g denied, 444 U.S. 890 (1979), and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In order to establish an insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000), quoting *Jackson*, 443 U.S. at 319. When reviewing the sufficiency of the evidence, a federal habeas court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for the jury. *See United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir.1995). Moreover, the inquiry is not whether the trier of fact made the correct determination of guilt or innocence, but whether it made a rational decision to acquit or convict. *Williams v. Haviland,* No. 1:05CV1014,

2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins*, 506 U.S. 506 U.S. 390, 401-02, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

In determining whether the state court's determination was objectively unreasonable, the Court must first determine whether the evidence was sufficient to convict under *Jackson*. *See Pinchon v. Myers*, 615 F.3d 631, 643 (6th Cir. 2010). If sufficient evidence exists with which to convict, the inquiry ends. *Id.* If the Court finds that the evidence is insufficient to convict, then it must apply the AEDPA deference standard and determine whether the Ohio appellate court's determination as to the trial court's verdict was "objectively unreasonable" in concluding to the contrary, keeping in mind that it is looked at "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*, quoting *Tucker v. Palmer*, 615 F.3d 631 (6th Cir. 2010 (citing *Jackson*, 443 U.S. at 319. This is the "double layer" of deference due a state court determination about the sufficiency of the evidence. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). A district court is not permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact. *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir. 1985), and *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983).

Counts One and Two of the Indictment in this case charged Petitioner with rape under Ohio Revised Code § 2907.02(A)(1)(b) for engaging in sexual conduct with the victim who was less than thirteen years of age. ECF Dkt. #9-1 at 3-4. Sexual conduct is defined under Ohio Revised Code § 2907.01(A) as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." Ohio Rev. Code § 2907.01(A).

The Ohio appellate court cited to the legal standard for reviewing the sufficiency of the evidence and rejected Petitioner's assertion of insufficient evidence to support a rape charge for vaginal penetration. ECF Dkt. #9-1 at 86-87. The court cited the victim's testimony that Petitioner put his "private part" into her on two occasions and he licked her vagina. *Id.* at 87. The court also cited to the evidence showing that while no sperm was present inside of the victim, a swab of the

-14-

victim's vagina at the hospital indicated the presence of a protein found in seminal fluid. *Id*. Applying the proper standard and viewing the evidence in a light most favorable to the prosecution, the Ohio appellate court found that the testimony of the victim and the swab were sufficient to establish that Petitioner engaged in sexual conduct with the victim in violation of Ohio law. *Id.*

The undersigned recommends that the Court find that the Ohio appellate court applied the correct legal standard and its decision finding that the evidence was sufficient to support the rape conviction was not contrary to or an unreasonable application of *Jackson*. Petitioner's only challenge is to whether sufficient evidence existed to convict him of vaginal rape. He asserts that the State failed to establish that vaginal penetration occurred because no DNA was found in the victim's vagina and while the victim testified that Petitioner placed his penis inside of her vagina twice and it hurt, the State "ignore[s] testimony from it's[sic] own witness, a nurse at the hospital who was involved in the victims[sic] evaluation, confirming that a child of the victims[sic] age would describe pain in a private area because 'children 't know what penetration should be like.'" ECF Dkt. #1 at 16.

The Ohio appellate court acknowledged that no sperm was present in the victim's vagina. ECF Dkt. #9-1 at 87. However, the court noted that the vaginal swab of the victim indicated the presence of a protein found in seminal fluid. *Id.* The court also cited and relied upon the victim's testimony that Petitioner placed his "private part" into her twice and it hurt each time. *Id.* The court further acknowledged Petitioner's assertion that the victim may have been mistaken about whether he penetrated her based upon her young age as a nurse testified that children of that age do not know what penetration should feel like. *Id.* The court found that in conducting a sufficiency of the evidence analysis, the evidence is viewed in a light most favorable to the prosecution and therefore the victim's testimony and the presence of seminal fluid were sufficient to establish vaginal penetration. *Id.*

This Court should defer to the Ohio appellate court's decision because it was not objectively unreasonable in concluding that a rational trier of fact could find Petitioner guilty of vaginal rape beyond a reasonable doubt. *Tucker*, 615 F.3d 631, citing *Jackson*, 443 U.S. at 319. The Sixth Circuit has held that "the testimony of the victim alone is constitutionally sufficient to sustain a

conviction.*" Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008)(citing *United States v. Terry*, 362 F.2d 914, 916 (6th Cr. 1966). In *Glover v. Warden*, the Court upheld the denial of a federal habeas corpus petition by the district court where the petitioner asserted the insufficiency of the evidence to support a conviction for rape of a minor due to a lack of DNA evidence and assertions that the minor victim had lied while testifying at trial. No. 17-3362, 2017 WL 8792664, at *2 (6th Cir. Oct. 11, 2017), unpublished. The Sixth Circuit held that "[t]he victim's testimony is sufficient to support a rape conviction; the prosecution is not required to produce medical or other physical evidence to corroborate the victim's testimony." *Id.*, citing *State v. Johnson*, 858 N.E.2d 1144, 1158 (Ohio 2006). Besides citing a lack of medical or physical evidence to establish his DNA, Glover had also asserted that the minor victim lied about him abusing her when she was six or seven years old by performing oral sex on her and that he continued this abuse for eleven years. *Id.* The Sixth Circuit held that federal habeas corpus courts do not engage in credibility assessments and therefore, based upon the testimony of the victim, reasonable jurists "would not debate the district court's conclusion that the state court's decision that the evidence was sufficient for the trial judge to convict him of rape was not contrary to or an unreasonable application of *Jackson*." *Id.*

Similarly here, Petitioner cited to the lack of his DNA found in the victim's vagina and the nurse's testimony that children of the victim's age do not know what penetration feels like and describing any type of act as hurting does not necessarily mean penetration. However, medical or other physical evidence was not necessary to corroborate the victim's testimony and the Ohio appellate court held that sufficient evidence of vaginal rape was presented through the victim's testimony that Petitioner put his penis in her vagina twice. The court also noted the presence of the protein found in seminal fluid that was found on the vaginal swab of the victim. This was sufficient to establish the element of sexual conduct for rape. Accordingly, the undersigned recommends that the Court find that the Ohio appellate court's decision finding sufficient evidence to establish vaginal rape was not contrary to or an unreasonable application of *Jackson*.

### C.      GROUND FOR RELIEF NUMBER 3 - LESSER INCLUDED OFFENSE

Petitioner also asserts that the trial court erred by failing to instruct the jury on the lesser included offense of GSI as to the rape charges against him because his DNA was not found on the

-16-

vaginal swab of the victim but was found only in her underwear and on a sanitary pad that she was wearing. ECF Dkt. #1 at 8. Petitioner contends that the jury could have therefore concluded that he did not penetrate the victim, but rather, he only engaged in sexual contact with the victim, which meets the elements of GSI, as opposed to rape, which requires sexual contact. *Id*.

The Sixth Circuit has held that alleged trial court error in failing to instruct on a lesser-included offense in a noncapital case is not "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure[.]" *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990). The *Bagby* Court held that "since it is not the function of a federal habeas court to correct errors in state law, [the court] would not be warranted in setting aside [a] conviction [on the basis of a faulty jury instruction] except under the most unusual circumstances." *Id*. The only question concerning jury instructions on federal habeas corpus review is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72.

The undersigned recommends that the Court find that Petitioner's ground for relief is not cognizable in federal habeas corpus because Petitioner is asserting an error of Ohio law and the Ohio appellate court wholly relied upon state law in addressing the assertion of trial court error in not instructing the jury on the lesser included offense of GSI. Moreover, the undersigned recommends that the Court find that the failure to present the GSI instructions did not so infect the trial that Petitioner's rape convictions violated due process.

The Ohio appellate court addressed Petitioner's assertion, relying on Ohio law for determining whether an offense should be presented to the jury as a lesser included offense. ECF Dkt. #9-1 at 88. The appellate court cited to *State v. Deanda*, 136 Ohio St.3d 18, 989 N.E.2d 986, 2013-Ohio-1722 (2013) and explained that determining this issue requires a two-tiered analysis: first, the court must make the legal determination of whether one offense is generally a lesser included offense of the offense charged; and second, a factual determination made by looking at the evidence and determining whether a "jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense." ECF Dkt. #9-1 at 88, quoting *Deanda*, 146 Ohio St.3d at 18, quoting *State v. Kidder*, 32 Ohio St.3d 279, 281 (1987).

-17-

The Ohio appellate court found that the first tier was met in the instant case because the Ohio Supreme Court had held that GSI is a lesser included offense of rape under Ohio law.  ECF Dkt. #9-1 at 88, citing *State v. Lynch*, 98 Ohio St.3d 514, 787 N.Ed.2d 1185, 2003-Ohio-2284 (2003).  Thus, the court proceeded to the second tier of the analysis, reviewing the relevant GSI statute, Ohio Revised Code § 2907.05(A)(4), which provided that "[n]o person shall have sexual contact with another * * * [who] is less than thirteen years of age * * *."  ECF Dkt. #9-1 at 88-89, quoting Ohio Rev. Code § 2907.05(A)(4).  The Ohio appellate court then reviewed the definition of "sexual contact" in that code section, which was defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."  ECF Dkt. #9-1 at 88-89, quoting Ohio Rev. Code § 2907001(B).

The Ohio appellate court found that Petitioner was not entitled to a lesser included jury instruction for GSI as to the rape count charging him with rape based upon cunnilingus because the Ohio code section defining sexual conduct as part of rape regarding cunnilingus does not require penetration.  ECF Dkt. #9-1 at 89, citing Ohio Revised Code §§ 2907.02(A)(1)(b), 2907.01(B).  The court quoted Ohio Supreme Court caselaw confirming this finding "[p]enetration is not required to commit cunnilingus.  Rather, the act of cunnilingus is completed by placing one's mouth on the female's genitals."  ECF Dkt. #9-1 at 89, quoting *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, paragraph 86.  The victim in this case testified that Petitioner licked her vagina.  ECF Dkt. # 9-4 at 59-60.  Petitioner asserts that cunnilingus may constitute rape and GSI and the evidence therefore supported a GSI instruction as well as a rape instruction.  ECF Dkt. #3 at 20.  However, such an assertion does not meet the second part of the analysis for instructing on a lesser included offense since the court must look at the evidence and determine whether a "jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense."  ECF Dkt. #9-1 at 89, quoting *Deanda*, 146 Ohio St.3d at 18.  Here, the testimony of the victim does not lead a jury to reasonably find that Petitioner was not guilty of rape

-18-

since cunnilingus does not require penetration.  Therefore, an instruction on the lesser included offense of GSI was not warranted, as properly found by the Ohio appellate court.

As to the Count One rape charge regarding vaginal intercourse with the victim, the Ohio appellate court also found that the trial court did not commit error in failing to instruct the jury on a GSI as a lesser included offense to this charge.  Before the appellate court and before this Court, Petitioner asserts that the lesser included offense charge of GSI was warranted because the victim's testimony that he put his penis in her vagina twice and it hurt was not sufficient to establish penetration for a rape charge because a nurse who testified at trial indicated that children do not always know if penetration occurs and penetration is not always associated with pain.  ECF Dkt. #1-17 at 89; ECF Dkt. #9 at 89.

In holding that the trial court did not err by failing to instruct the jury on GSI for this rape count, the Ohio appellate court noted facts and evidence presented at trial other than the victim's testimony that when Petitioner put his penis in her vagina, it hurt.  ECF Dkt. #9-1 at 89.  The Ohio appellate court also cited to the victim's testimony that while she was at the hospital, she felt something coming out of her body which was different than how she felt when she had her menstrual cycle.  *Id.* at 89, citing ECF Dkt. # 9-4 at 81-84, 106-107.  The court also cited to the vaginal swab of the victim which tested presumptively positive for seminal fluid, even though there was no sperm cells identified.  *Id.* at 89, citing ECF Dkt. #9-6 at 74.  The appellate court also pointed out that Petitioner's counsel at trial had the opportunity to challenge the victim's ability to distinguish between the mere touching of her genitals and actual penetration of her vagina but did not do so, and the defense offered no explanation for the presence of seminal fluid on the vaginal swab.  *Id.*  Based upon these findings, the Ohio appellate court found that a jury could not have reasonably found that Petitioner was not guilty of rape and therefore a lesser included offense charge for GSI was unwarranted.  *Id.*

Based upon the victim's testimony that Petitioner inserted his penis into her vagina, the presence of seminal fluid on the vaginal swab of the victim, and defense counsel's failure to ask the victim questions concerning her ability to determine actual penetration of her vagina on cross-examination, the undersigned recommends that the Court find that the Ohio appellate court's

-19-

determination was not an unreasonable determination of facts and an instruction on GSI was not warranted because a jury could not have reasonably found that Petitioner was not guilty of rape.

### D.   GROUND FOR RELIEF NUMBER 4 - SENTENCING

In Ground for Relief Number 4, Petitioner asserts that the trial court improperly increased his sentence as punishment for his refusal to accept a plea offer and to proceed to trial.  ECF Dkt. #1 at 9; ECF Dkt. #11 at 16-17.  Respondent contends that the Ohio appellate court's review of this issue is not contrary to or an unreasonable application of the facts in light of the evidence presented. ECF Dkt. #9 at 22. For the following reasons, the undersigned recommends that the Court decline to review this Ground for Relief because it is procedurally defaulted, no Ohio court has adjudicated this issue on its merits, and the items relied upon by the Ohio appellate court in declining to review this issue are not present in the record before this Court.

On the record and prior to trial, the prosecution in Petitioner's case placed on the record its offer of a plea agreement offering Petitioner a sentence of life in prison with parole eligibility after 10 or 15 years if he pled guilty to the indictment.  *Id.* at 35.  After defense counsel's indication that Petitioner planned to reject the plea, the trial court and Petitioner engaged in the following discussion on the record:

>THE COURT: Mr. Henry, let me just talk to you directly.  Is that true, you're not interested in accepting the plea offer?
>
>THE DEFENDANT: Right.
>
>THE COURT: Okay.  I want you to understand that if you are found guilty in this case after putting this child through a trial, if you are found guilty, and I understand that you have this right to go to trial and I do not impose a trial tax in the form of a sentence, but I do provide a trial - - or I mean a plea incentive based upon someone's acceptance of responsibility for their actions, number one, and based upon their sparing particularly vulnerable witnesses from having to go through the trauma of testimony that is - - comes in a trial of this nature.
>
>So there is not a trial tax, but there is a trial - - benefit or I'm sorry, a plea benefit and that really comes, you know - - you know, in the federal courts they have codified, it's a part of the law, that a person who accepts responsibility and enters a guilty plea or plea is permitted to - - or is given a benefit when it comes to sentencing for that, and I follow that philosophy, particularly in these cases.
>
>Now, I certainly am not going to twist your arm and tell you that you should accept responsibility for something you didn't do, but here is what I'm going to tell you: From what I understand about the evidence, and again the jury is going to make the decision on the evidence, but this is what I understand about the evidence, is that

originally you gave a statement where you said that the semen that was found on this child's underwear was planted there by her mother; that her mother gave you oral sex that day and came into possession of your semen or seminal fluid and put it on her daughter's underwear and she planted that.

I heard that - - or I heard that that was - - I understand that's what the evidence is likely to be.

Then I got a letter from you, a letter your wrote to me, in which you tell me, you know what, you didn't force anybody to do anything.  That's what you wrote to me.

Now, what that tells me is that you didn't tell me this was planted evidence.  You said I didn't force anybody to do anything and that sounds suspiciously to me like you're claiming that any contact you had with this child was consensual, meaning she agreed - - I'm not asking you to speak.  I'm telling you what I think.

You know, lawyers' skin crawls when their clients write letters to judges, and you wrote me a big, long letter.  You wanted to know all this stuff.  Well, I know it now and I know - - I know what I think I know is basically it, because you wrote it to me.  So it sounds suspiciously to me like you are going to - - you know, that's that's your position.

This child is going to come in here and testify.  The prosecutor is going to put on evidence that that was your seminal fluid on her underwear, and she is 12 years old.

That sentence is - - that guilty verdict, if they believe that you penetrated that child in any way with any part of your body, will result in a sentence of life without parole.

MR. DANGELO: Judge, the maximum is 25 to life.

THE COURT:            I'm sorry, 25 to life, that's right, to life.  The prosecutor has
                             offered - -

MR. DANGELO: 15 to life.

THE COURT: - - 15, that's ten years less that you would be able to go to the parole board.  Mr. Madison has also asked me, if you were to enter into a plea for a presentence investigation, whether I would consider the lowest number, which is ten years to life.  I would consider that.  I would consider it because - - how old are you?

THE DEFENDANT: 55.

THE COURT:            So you're 55.  You wouldn't even go to the parole board until you're 65.  You would have an opportunity at that point.  I think that the community can be adequately protected from you because of both your age, the length of the sentence, and what I understand about parole proceedings.

But you need to understand something, I really don't care.  Sometimes I have folks in here that I really care.  I think they have made mistakes.  I think that they been put in bad situations, and I encourage them to accept responsibility to allow the judicial system or the criminal justice system to give them a sentence that is appropriate.

-21-

In this case the only thing I care about is not putting this child at age 12 through this testimony. I don't care about what happens to you. So if you don't - - if you want to go forward, it is your right. You have a good lawyer. Walter has been defending you and representing you strongly from the moment he came into this case, and we will put 12 people in this box, and we will proceed with the trial.

I have been doing this work for 25 years. You are going to be convicted. Let me assure you, you are going to be convicted. That doesn't come because I'm prejudging the evidence. It's because I have been doing this for 25 years.

The chance of you not being convicted is probably the same as, you know, a hole opening up in that courtyard out there and the whole building get swallowed up. Slim to none.

But, again, I understand. There are benefits to going to trial, and one of them is that there has never been a trial in history that - - or case history that has gone on without some sort of error, someone making a mistake. Often it's me.

The question is, I practiced law for 20 years, and our Court of Appeals seem to find that most of the errors, if not all of the errors, that I raise on behalf of my clients were harmless and my client sat in prison for a very long period of time,

You are not going home. You know, there is just no scenario that you're going home, but if you want to preserve your rights to appeal, you need to go to trial, so that is a conversation that you can have with Mr. Madison for about five minutes because we're not going to keep this jury waiting.

ECF Dkt. #9-2 at 6-12. Shortly thereafter, Petitioner's counsel indicated that Petitioner wished to proceed to a trial on the matter and the trial proceeded. *Id*. at 23. On May 13, 2014, the trial court issued its journal entry indicating that Petitioner was provided a sentencing hearing and afforded all of his statutory rights. ECF Dkt. #9-1 at 13. The trial court further indicated in its sentencing entry that it had considered the record, oral statements, the principles and purposes of sentencing under the Ohio statute, as well as the seriousness and recidivism factors and sanctions under relevant Ohio statutes. *Id*. The court sentenced Petitioner to 10 years to life in prison on each rape count and 5 years of prison on the GSI count, all sentences to run consecutively, for a total sentence of 25 years to life in prison. *Id*.

In his appeal, Petitioner cited to the trial court's statements prior to trial that there was no trial tax, but there was a plea incentive for acceptance of responsibility and not forcing a minor victim to testify. ECF Dkt. #9-1 at 16-17. He contended that the plea incentive was just as equally a punishment for his decision to go to trial because when he rejected the plea offer and was subsequently found guilty by a jury, the court sentenced him to the maximum sentence possible.

*Id.*

      The Ohio appellate court cited to state law holding that a defendant is guaranteed a right to a trial and should not be punished for exercising that right.  ECF Dkt. #9-1 at 90, quoting *State v. O'Dell*, 45 Ohio St.3d 140 (1989), paragraph two of the syllabus.  It quoted the trial court transcript where the trial court told Petitioner that there was no trial tax, but there was a plea benefit or incentive in sparing the minor child from testifying at a trial.  *Id*. at 90.  The appellate court also relied upon the letter that the trial court discussed that it had received from Petitioner.  *Id.* at 90-91.  The appellate court noted that Petitioner's letter to the court was not made part of the record.  *Id*. at 91.  The Ohio appellate court thereafter held that it was not able to determine whether the trial court remarks were improper because the trial court's statements to Petitioner before trial concerning the length of his sentence if he proceeded to trial were based upon the information the court learned from Petitioner's letter, not his failure to plead guilty.  *Id*. The Ohio appellate court ruled that without the letter, which was not made part of the record, it could not determine the issue and a petition for post-conviction relief was more suitable for this issue.  *Id.*

      In his Traverse, Petitioner quotes from and incorporates as his argument a concurrence/ dissent by one of the Ohio appellate judges in his case.  ECF Dkt. #11 at 17; ECF Dkt. #9-1 at 92-93.  That Ohio appellate court judge dissented from the majority opinion's resolution of the instant issue.  ECF Dkt. #9-1 at 92-93.  The judge believed that the trial court's pretrial remarks to Petitioner violated his constitutional right to a trial because they created an appearance that Petitioner's failure to plead guilty would result in a more severe sentence, despite the trial court judge's statement that she was not imposing a trial tax.  *Id*. at 92.  He also indicated that Petitioner's letter to the trial court was irrelevant to resolving this issue because regardless of the contents of the letter, the trial court told Petitioner that a greater sentence would be imposed if he went to trial and did not accept a plea.  *Id*. at 93.

      The undersigned recommends that the Court decline to address Petitioner's fourth ground for relief for a number of reasons.  First, the record before this Court contains neither the sentencing transcript nor the letter upon which the Ohio appellate court relied in declining to address Petitioner's issue on the merits.  While the relevance of that letter is questioned by the

dissent in the Ohio appellate court, the majority held that the letter was necessary in order to determine whether the trial court's remarks were improper.  Without the sentencing transcript or the letter in the record before this Court, it is impossible to determine whether the Ohio appellate court erred in its decision to decline Petitioner's claim for relief.  Moreover, this Court has no decision from an Ohio court on this matter since the Ohio appellate court indicated that Petitioner should file a petition for post-conviction relief to include the letter in the record and the Ohio Supreme Court declined jurisdiction over Petitioner's appeal.

Since Petitioner failed to file a state post-conviction relief petition, procedural default also bars this Court's review of Petitioner's ground for relief.  The Ohio appellate court indicated in its opinion that Petitioner needed to file a petition for state post-conviction relief because the letter that the trial court relied upon was not in the record and a post-conviction relief petition was the proper vehicle for getting consideration of evidence de hors the record.   Petitioner did not file a petition for post-conviction relief pursuant to Ohio Revised Code § 2953.21 as recommended by the Ohio appellate court.  And the time for filing such a petition has expired.  It is therefore barred from review before this Court as procedurally defaulted.  A claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986). Petitioner has presented no cause to excuse his procedural default and therefore this Court need not address prejudice.

This Court can also review state court rulings if they violate due process, that is, "[if] they offend [] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000), quoting *Montana v. Engelhoff,* 518 U.S. 37, 43 (1996).  Here, the undersigned recommends that the Court decline

-24-

addressing the issue of due process because the record before this Court lacks the sentencing transcript and the letter deemed necessary by the Ohio appellate court in order to determine the claim. Petitioner has not presented these necessary documents.

For these reasons, the undersigned recommends that this Court decline to address Petitioner's fourth ground for relief.

### E.     GROUND FOR RELIEF NUMBER 5 - MERGER OF OFFENSES

Petitioner further asserts that the trial court erred by not merging all three of his convictions at sentencing. ECF Dkt. #1 at 11. He contends that all of the offenses for which he was convicted were committed as part of the same animus and course of conduct. *Id.*

The undersigned recommends that the Court decline to address this Ground for Relief because Petitioner presented it solely as a state law issue and it is noncognizable before this federal habeas corpus Court. Challenges to an Ohio court's interpretation and application of Ohio's sentencing laws are not cognizable in federal habeas corpus actions. *Estelle,* 502 U.S. at 67-68; *Howard v. White*, No. 03-1042, 76 Fed. App'x 52, 2003 WL 22146139, at *2 (6th Cir. Sept. 16, 2003), unpublished.

In his brief to the Ohio appellate court, Petitioner cited solely to Ohio law. ECF Dkt. #9-1 at 37-38. Moreover, he also conceded this issue on oral argument before the Ohio appellate court as the Ohio appellate court indicated as much in its decision and overruled this claim as a result. ECF Dkt. #9-1 at 91. Petitioner admits conceding this claim in his federal habeas corpus petition. ECF Dkt. #1 at 11.

Without more than a general assertion to the "5th, 6th, and 14th" Amendments to United States Constitution," and a vague reference to equal protection rights, and with his concession of the merits of this claim at oral argument before the Ohio court of appeals, the undersigned recommends that the Court decline to review this Ground for Relief as it is waived.

## VII.     CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court decline to review Petitioner's Ground for Relief Number 1 as it is not cognizable in federal habeas corpus and Petitioner has not presented sufficient evidence of a denial of fundamental fairness. The

undersigned further recommends that the Court find that the Ohio Appellate Court's determination of the issues in Petitioner's Grounds for Relief Numbers 2 and 3 are not contrary to or an unreasonable application of federal law as determined by the Supreme Court of the United States. Moreover, the undersigned recommends that the Court decline to review Petitioner's Ground for Relief Number 4 because the claim is not cognizable before this Court, it is procedurally defaulted, and/or the relevant documents are missing from this Court's record in order to determine the issue. Finally, the undersigned recommends that the Court find that Petitioner's Ground for Relief Number 5 is not cognizable before this Court and is otherwise waived because Petitioner waived its merits at oral argument before the Ohio appellate court.

Accordingly, the undersigned recommends that the Court DISMISS the instant petition in its entirety with prejudice.  ECF Dkt. #1.

DATE: November 30, 2018                    */s/ George J. Limbert*
                                           GEORGE J. LIMBERT
                                           UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).